<u>NOT FOR PUBLICATION</u>                                        (Doc. No. 26)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
                                    :

ROBERT FLEISHER, D.M.D.,           :
                                      :

              Plaintiff,        :

                                      :          Civil No. 10-2678 (RBK/KMW)
      v.                      :

                                      :               **OPINION**

STANDARD INSURANCE COMPANY,  :

                                      :

            Defendant.     :
_____ :

**KUGLER**, United States District Judge:

      This is a disability insurance coverage dispute stemming from an ERISA-governed insurance policy issued by Defendant Standard Insurance Company ("Standard").  Before the Court is Standard's motion to dismiss under Rule 12(b)(6).  Plaintiff alleges that Standard improperly reduced his disability benefits by subtracting benefits he received under a separate policy issued by North American Company for Life and Health Insurance ("North American").  Standard claims that the deduction was proper because the Standard policy expressly provides for the subtraction of benefits received under "other group insurance coverage," and the North American policy qualifies as "group insurance."  Plaintiff responds that the North American policy is most appropriately characterized as "individual insurance."  Plaintiff asserts individual and class claims for wrongful denial of benefits under ERISA.  Plaintiff defines the putative class to include other Standard beneficiaries whose benefits Standard reduced by amounts they received under other policies.  Because the North American policy bears the characteristics of a kind of collective insurance called "franchise insurance," and because the phrase "group

1

insurance coverage" can reasonably include franchise insurance, the Court finds no basis to disturb Standard's interpretation or application of the Standard policy.  The Court grants Standard's motion to dismiss.

## I.   BACKGROUND

### A.  Factual Background[1]

Plaintiff is a dentist.  While practicing dentistry, Plaintiff obtained long term disability coverage under both the Standard policy and the North American policy.  In 2008, Plaintiff became totally disabled and claimed coverage under both policies.  Plaintiff's claims stem from Standard's determination that Plaintiff's benefits under the Standard policy should be reduced by the benefits he received under the North American policy.

The Standard policy is a group long-term disability policy that Standard issued to Plaintiff's employer, Endodontics, Ltd., P.C. ("Endodontics").  Plaintiff was covered by the Standard policy as a plan participant because he was a member of Endodontics.  According to the Standard policy, a plan participant who becomes disabled is entitled to "LTD Benefits according to the terms of the Group Policy."  (Pl.'s Second Compl. Ex. 1, at 4).  "LTD benefits" are equal to a percentage of the plan participant's pre-disability earnings, "reduced by Deductible Income."  (Id. at 2).  "Deductible Income" includes "[a]ny amount you receive or are eligible to receive because of your disability under another group insurance coverage."  (Id. at 13).  The policy does not define "another group insurance coverage."  The policy excludes from the definition of "Deductible Income" all "benefits from any individual disability insurance policy," but it does not define "individual disability insurance policy."  (Id.).

---

[1] The facts in this section are taken from Plaintiff's Second Amended Complaint and the attached exhibits.  As discussed below, although Plaintiff filed the Second Amended Complaint without obtaining leave of the Court pursuant to Federal Rule of Civil Procedure 15, the Court finds that the Second Amended Complaint is properly dismissed on the merits under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

The Standard policy also provides that Standard has "full and exclusive authority to control and manage the [Standard] Policy, to administer claims, and to interpret the [Standard] Policy and resolve all questions arising in the administration, interpretation, and application of the [Standard] policy."  (Id. at 20).  In that regard, Standard's "authority includes, but is not limited to, . . . [t]he right to determine: . . . eligibility for insurance; . . . [e]ntitlement to benefits; . . . [t]he amount of benefits payable; and . . . [t]he sufficiency and the amount of information [Standard] may reasonably require to [make those determinations]."  (Id.) (formatting altered).

Plaintiff obtained coverage under the North American policy "through the American Association of Endodontics" (the "AAE").  (Ex. 3, at 1).  Plaintiff attaches to the Second Amended Complaint a six-page document entitled "Certificate of Insurance" issued by North American (the "Certificate").  (Second Am. Compl. Ex. 2, at 1).  The Certificate provides:

> NORTH AMERICAN COMPANY
> . . .
>
> Having issued group policy PG A320 (herein called Policy) insuring members of the Association [the AAE] . . . .
>
> HEREBY CERTIFIES that the member to whom this Certificate is issued (herein the Insured) is insured under and subject to all the provisions, definitions, limitations and conditions of said policy . . . as to injury and sickness as defined herein, provided such member is . . . on active, full-time duty . . .

 (Id. at 1).  The Certificate includes multiple other references to the interplay between "the policy" and "this Certificate."  (See id. at 1, 5, 7).  The Certificate also provides:  "The policy is in possession of the Holder and may be inspected by the Insured at any time during business hours at the office of the Holder."  (Id. at 8).

Plaintiff's disability entitles him to receive $10,000 a month under the Standard policy and $1,500 a month under the North American policy.  However, Standard determined that

Plaintiff's proceeds under the North American policy were "group insurance coverage," and therefore deductable from his "LTD Benefits" under the Standard policy.  Thus, Standard pays Plaintiff only $8,500 per month in benefits under the Standard policy.

Plaintiff contested Standard's determination that the Certificate is "group insurance coverage."  In support of his position, Plaintiff obtained a letter from North American stating:

> As we previously explained, please understand that that [sic] Dr. Fleisher's North American Company policy . . . was issued through the American Association of Endodontics.  Even though this policy was issued through this group, it is an individual disability income policy and we are treating all aspects of Dr. Fleisher's claim as an individual disability income policy.

(Second Am. Compl. Ex. 3).  Plaintiff also alleges that "[a]ll insurance policies issued through professional associations are individual disability insurance policies."  (Second Am. Compl. ¶ 7).  Plaintiff does not cite the basis for this categorical statement.  He insists, however, that "in terms of classifying policies as 'individual' in nature, all professional association disability insurance policies contain materially identical characteristics . . . [, and] the existence of these characteristics makes them inherently and uniformly 'individual' in nature."  (Id. ¶¶ 9-10).

In that regard, Plaintiff claims that the North American policy is an individual rather than group policy because: (1) it was individually underwritten for Plaintiff; (2) Plaintiff paid the premiums directly; (3) Plaintiff "enrolled directly"; (4) Plaintiff submits claims directly to North American; (5) North American issues Plaintiff individual billing statements; and (6) the policy automatically renews at the end of each term.  (Id.).  According to Plaintiff, those features establish that the North American policy is not "group coverage" within the meaning of the Standard policy, and, therefore, Standard is not authorized to deduct benefits under the North American policy from benefits due under the Standard policy.

4

**B.  Procedural History**

Plaintiff filed the Complaint in May 2010.  The Complaint asserted claims for breach of contract, violations of the New Jersey Consumer Fraud Act, breach of fiduciary duty under ERISA, and unjust enrichment.  Plaintiff asserted each claim on behalf of himself and a putative class.  Plaintiff defined the putative class as including two subclasses:

    a. Those Members who are currently disabled and whose benefits from The Standard are reduced by benefits from a professional association policy,

    b. Those members who have not yet manifested an entitlement to benefits under their policies issued by The Standard because they are not presently disabled.

(Compl. ¶ 30).  Standard did not answer the Complaint but timely moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (Doc. No. 11).  Standard argued that ERISA preempts Plaintiff's state law claims for breach of contract, violations of the New Jersey Consumer Fraud Act, and unjust enrichment.  Standard also argued that Plaintiff failed to state a claim under ERISA.

Plaintiff did not oppose Standard's motion to dismiss but made a motion to amend the Complaint, which the Court granted.  The Amended Complaint included only claims for breach of fiduciary duty and breach of contract under ERISA.  The Amended Complaint asserts both claims on behalf of Plaintiff and the same putative class defined in the original Complaint. Standard did not answer Plaintiff's Amended Complaint but timely moved to dismiss pursuant to Rule 12(b)(6).  (Doc. No. 23).  Standard argued that Plaintiff could not, as a matter of law, assert a claim for breach of fiduciary duty under ERISA § 502(a)(1)(B) or § 502(a)(3).  Standard also argued that Plaintiff failed to state a claim for recovery of benefits under an ERISA-governed plan.

Plaintiff did not oppose Standard's motion to dismiss the Amended Complaint.  Rather, without leave of the Court, Plaintiff purported to file a Second Amended Complaint.  The Second Amended Complaint asserts claims for:  (1) breach of fiduciary duty pursuant to ERISA § 502(a)(3) (Count I); (2) breach of contract pursuant to ERISA § 502(a)(1)(B) (Count II); and (3) breach of contract pursuant to ERISA § 502(a)(3) (Count III).  Plaintiff asserts all three claims on behalf of himself and the same putative class.

Standard now moves to dismiss the Second Amended Complaint.   (Doc. No. 26).  Standard argues that the Second Amended Complaint should be dismissed because Plaintiff violated Rule 15 by filing it without first obtaining leave from the Court.  Standard also argues that the Second Amended Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim.  Standard argues that Counts I and III of the Second Amended Complaint fail because a plaintiff may bring a claim under ERISA § 502(a)(3) only if the requested relief is unavailable under any other ERISA provision.  Standard argues that Count II should be dismissed because Plaintiff's allegations, even if accepted as true, do not establish that Standard's reduction of Plaintiff's benefits was arbitrary or capricious.

Plaintiff opposes Standard's motion to dismiss the Second Amended Complaint.  He argues that Rule 15's standard for amendment is satisfied.  He also argues that he may plead claims under ERISA § 502(a)(3) and § 502(a)(1)(B) in the alternative and that his factual allegations establish that Standard arbitrarily denied him benefits.  Plaintiff further claims that the Court must review Standard's reduction of benefits de novo because that decision was based on Standard's interpretation of the North American policy, which is a nonplan document.

## II.      LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted.  With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In addition to the allegations of the complaint, a court may consider matters of public record, documents specifically referenced in or attached to the complaint, and documents integral to the allegations raised in the complaint.  Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 255 n. 5 (3d Cir. 2004).

In making that determination, a court must conduct a two-part analysis.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11.  First, the court must separate factual allegations from legal conclusions.  Iqbal, 129 S. Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief."  Id. at 1950.  Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense."  Id.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  See id.

## III.    DISCUSSION

### A.  Plaintiff's ERISA Claim under § 502(a)(1)(B)

Count II of the Second Amended Complaint asserts a claim for "breach of contract" under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  Plaintiff alleges that Standard "breached its obligations under ERISA to [Plaintiff] and all Members of the Class by taking a deduction to which it was not entitled and thus unreasonably failing to pay those benefits in full to them."  (Second Am. Compl. ¶ 66).

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans."  Shaw v. Delta Air Lines, 463 U.S. 85, 90 (1983). "An 'employee welfare benefit plan' includes any program that provides benefits for contingencies such as illness, accident, disability, death, or unemployment."  Id. at 91 n.5 (citing 29 U.S.C. § 1002(1)).  ERISA does not mandate that employers provide any particular benefits, but it "sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for" employee benefit plans.  Id. at 91 (citing 29 U.S.C. §§ 1021-31, 1101-14).

In order to facilitate those objectives, § 502(a)(1)(B) creates a civil cause of action for a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  A claim under § 502(a)(1)(B) generally involves a suit by a plan beneficiary against the plan administrator for failure to properly administer the plan.  See, e.g., Zebrowski v. Evonik Degussa Corp. Admin. Comm., No. 10-542, 2011 U.S. Dist. LEXIS 18596 (E.D. Pa. Feb. 23, 2011).  To assert a claim under § 502(a)(1)(B), a plaintiff must demonstrate that "he or she [has] a right to benefits that is legally enforceable against the plan" and that the

plan administrator improperly denied him or her those benefits.  Hooven v. Exxon Mobil Corp., 465 F.3d 566, 574 (3d Cir. 2006).

The parties do not dispute that the Standard policy is an "employee welfare benefit plan" governed by ERISA.  See 29 U. S. C. § 1002(1) (defining "employee welfare benefit plan"). Rather, they dispute whether the Standard policy permits Standard to reduce Plaintiff's benefits by amounts he receives under the North American policy.  The parties dispute both the proper standard to be applied in reviewing Standard's reduction of benefits, as well as the outcome under the appropriate standard.

### 1.   Standard of Review

Plaintiff argues that a plan administrator is entitled to the deferential "arbitrary and capricious" standard of review only if the administrator is interpreting documents that are part of the governing plan.  (Pl.'s Br. in Opp. to Def.'s M. to Dismiss, at 11).  According to Plaintiff, "if the administrator is interpreting documents that are not part of the coverage plan, a de novo review applies."  (Id. at 11).  Plaintiff claims that in this case de novo review applies because Standard's denial of benefits was based on its interpretation of the North American policy, which is a nonplan document.  Standard responds that if a plan grants the administrator discretion to both interpret the underlying plan and make factual determinations regarding administration of benefits, then the arbitrary-and-capricious standard of review applies to an administrator's findings regarding documents that are not part of the underlying plan.

"In Firestone Tire & Rubber Co. v. Bruch, the Supreme Court held that, when analyzing a challenge to a denial of benefits in these actions, a court must review the plan administrator's decision under a de novo standard of review unless the plan grants discretionary authority to the administrator to determine eligibility for benefits or interpret terms under the plan."  Saltzman v.

Independence Blue Cross, 384 F. App'x. 107, 111 (3d Cir. 2010) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 (1989)).  Thus, the Third Circuit has held that the appropriate standard of review depends on the discretion granted to the administrator under the terms of the ERISA-governed plan.  Mitchell v. Eastman Kodak Co., 113 F.3d 433, 438 (3d Cir. 1997), abrogated on other grounds as stated in Miller v. Am. Airlines, Inc., No. 10-1784, 2011 U.S. App. LEXIS 1462, at *19-20 (3d Cir. Jan. 25, 2011) (citing Firestone, 489 U.S. at 109).  If the plan grants the administrator discretion "to construe the terms of the plan," the court "applies an arbitrary and capricious standard of review" regarding interpretation of the plan.  Saltzman, 384 F. App'x. at 111 (citing Gritzer v. CBS, Inc., 275 F.3d 291, 295 (3d Cir. 2002)).  Similarly, if the plan grants the administrator "the discretion to act as a finder of facts," then the court will also apply the arbitrary and capricious standard of review to factual determinations.  Mitchell, 113 F.3d at 438; see Anderson v. Bakery & Confectionery Union & Indus. Int'l Pension Fund, 654 F. Supp. 2d 267, 279 (E.D. Pa. 2009) (finding that factual determinations were subject to arbitrary and capricious standard of review).

In Mitchell, the plan vested the administrator with the following authority:  "In reviewing the claim of any participant, the Plan Administrator shall have full discretionary authority to determine all questions arising in the administration, interpretation and application of the plan." Id.  The Third Circuit held that, "giving this language its ordinary meaning, we conclude that the broad grant of discretionary authority to the Administrator is sufficient to preclude de novo review of both interpretative and factual determinations made in the course of applying the benefit provisions of the Plan to a particular application for benefits."  Id.  The Third Circuit reasoned that granting the administrator the authority to "apply" the plan, gave the administrator the authority to resolve factual disputes necessary to determine benefit eligibility under the plan.

Id. at 439 ("'application' of the Plan, like 'application' of the law, must encompass the resolution of factual disputes as well as the interpretation of the governing provisions of the plan."). Thus, the Third Circuit applied the deferential abuse-of-discretion standard[2] to the plan administrator's interpretation of the plan's terms as well as the administrator's use and interpretation of nonplan documents. Id. at 440-43; Anderson, 654 F. Supp. 2d at 279 ("the Mitchell court reviewed the administrator's decision to deny the plaintiff benefits – a decision the administrator had reached on a record of evidence containing medical (non-plan) documentation – under the deferential arbitrary and capricious standard.").

Like the plan at issue in Mitchell, the Standard policy gives the administrator discretionary authority over the policy's "application." Indeed, the Standard policy vests the administrator with the "full and exclusive authority" to "interpret the [Standard] Policy and resolve all questions arising in the administration, interpretation, and application of the [Standard] Policy." (Second Am. Compl. Ex. 1, at 20) (emphasis added). Thus, as in Mitchell, the Standard policy gives Standard the authority to interpret the plan and make findings of fact necessary to determine benefit eligibility. See Mitchell, 113 F.3d at 439; see also Anderson, 654 F. Supp. 2d at 279 (holding that plan language giving administrator the "exclusive right to administer, apply, and interpret the Plan" gave the administrator the discretion to make necessary factual determinations). The Court must therefore review Standard's benefit determination under the deferential abuse-of-discretion standard. This includes Standard's interpretation and characterization of the North American policy. See Anderson, 654 F. Supp. 2d at 279 (holding that plan administrator's interpretation of a settlement agreement for purposes of determining

---

[2] According to the Third Circuit: "Our prior caselaw referenced an 'arbitrary and capricious' standard of review, while [the Supreme Court in Metro Life Ins. Co. v. Glenn, 554 U.S. 105 (2008)], describes the standard as 'abuse of discretion.' We have recognized that, at least in the ERISA context, these standards of review are practically identical." Estate of Schwing v. Lilly Health Plan, 562 F.3d 522, 526 n.2 (3d Cir. 2009) (citing Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 n.4 (3d Cir.1993)).

eligibility for pension benefits was a factual determination entitled to deference under the abuse-of-discretion standard).

### 2.    Denial of Full Benefits under the Standard Policy

"Under the arbitrary and capricious (or abuse of discretion) standard of review, the district court may overturn a decision of the Plan administrator only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'"  Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993) (quoting Adamo v. Anchor Hocking Corp., 720 F. Supp. 491, 500 (W.D. Pa. 1989)).  "This scope of review is narrow, and the court is not free to substitute its own judgment for that of the defendants [sic] in determining eligibility for plan benefits."  Id.

Regarding interpretation of plan terms, an administrator's interpretation is "not arbitrary" if it is "reasonably consistent with unambiguous plan language."[3]  Bill Gray Enters. v. Gourley, 248 F.3d 206, 218 (3d Cir. 2001).  Even if plan language is ambiguous, the court must defer to the administrator's interpretation unless it is arbitrary and capricious.  McElroy v. SmithKline Beecham Health & Welfare Benefits Trust Plan, 340 F.3d 139, 143 (3d Cir. 2003).  Similarly, an administrator's factual determinations are based on "substantial evidence" if they are supported by "more than a mere scintilla."  Kowalchick v. Director, OWCP, 893 F.2d 615, 619 (3d Cir. 1990).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as

---

[3] The Court notes that there is some uncertainty in the Third Circuit regarding the appropriate standard of review when the plan language is unambiguous.  In Lasser v. Reliance Std. Life Ins. Co., 344 F.3d 381, 386 (3d Cir. 2003), the Third Circuit stated:  "We recognize that, if the meaning of [the plan term] is ambiguous, [the administrator's] definition is entitled to deference under the applicable arbitrary and capricious standard."  See Skretvedt v. E.I. DuPont de Numours & Co., 268 F.3d 167, 177 (3d. Cir. 2001) ("[the administrator's] interpretation of [the plan] is entitled to deference under the arbitrary and capricious standard, unless it is contrary to the plain language of the plan.").  This language suggests that the arbitrary-and-capricious standard of review is appropriate only if the language of the plan is ambiguous.  However, "the Supreme Court in Firestone mandated the 'arbitrary and capricious' standard of review, without reference to whether a policy term was ambiguous."  Weiss v. Prudential Ins. Co. of Am., 497 F. Supp. 2d 606, 611 (D.N.J. 2007).  Thus, some district courts in this Circuit have departed from Lasser and Skretvedt and applied the arbitrary and capricious standard without regard to whether the disputed term was ambiguous.  See, e.g., id. at 613.  Here, because the Court determines that the phrase "another group insurance coverage" is ambiguous, the arbitrary and capricious standard applies in any event.

adequate to support a conclusion."  Soubik v. Director, OWCP, 366 F.3d 226, 233 (3d Cir. 2004).  When reviewing an administrator's factual determinations, the court looks only to the "evidence that was before the administrator when he made the decision being reviewed."  Mitchell, 113 F.3d at 440.

Notwithstanding this deferential standard, the Supreme Court has held that if a plan administrator performs the dual role of determining benefit eligibility and paying benefits, a conflict of interest exists that a court must consider when reviewing determinations by plan administrators.  Firestone, 489 U.S. at 115 ("if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion'") (quoting Restatement (Second) of Trusts § 187, cmt. D (1959)).[4]  However, a conflict of interest is only one factor to consider when evaluating the lawfulness of a plan administrator's determinations.  See Glenn, 554 U.S. at 117 ("Firestone  means what the word 'factor' implies, namely, that when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one.").  In Glenn, the Supreme Court further explained that a conflict of interest may operate as a "tiebreaker" in cases where the balancing of other factors leads to a close call.  Glenn, 554 U.S. at 117.

Here, the first factor to consider is the relevant language in the Standard policy.  The policy excludes as deductible income all proceeds paid "under another group insurance coverage."  Unfortunately, that phrase does not provide much clarity because the term "group

---

[4] In Metro Life Ins. Co. v. Glenn, 554 U.S. 105, 115 (2008), the Supreme Court clarified its holding in Firestone by explaining that a conflict of interest does not result in "a change in the standard of review."  (emphasis in original). Metro Life abrogated a line of Third Circuit cases interpreting Firestone to require a "'sliding scale' standard of review where the level of conflict would influence the intensity of arbitrary and capricious review."  Miller v. Am. Airlines, Inc., No. 10-1784, 2011 U.S. App. LEXIS 1462, at *13-14 n.3 (3d Cir. Jan. 25, 2011) (explaining Glenn's impact on Third Circuit precedent applying Firestone).  The Third Circuit now applies "a deferential abuse of discretion standard of review across the board and consider[s] any conflict of interest as one of several factors in considering whether the administrator or the fiduciary abused its discretion."  Schwing, 562 F.3d at 525.

insurance" is ambiguous.  In its most general sense, the term is used "whenever  a master policy was issued to a person or entity, <u>including</u> <u>associations</u>, with individual certificates then being issued to those whose lives or well-being are the subject of insurance."  Holmes' Appleman on Insurance § 2.5 (2d ed. 2002) (emphasis added); <u>see</u> <u>Hall v. Life Ins. Co. of N. Am.</u>, 317 F.3d 773, 775-76 (7th Cir. 2003); Couch on Insurance § 1:29 (3d ed. 2002).  However, insurers have developed at least two subsets of collective insurance products:  "true group insurance" and "franchise insurance."  <u>See</u> Appleman on Insurance Law & Practice § 54 (rev. ed. 1981). "Group insurance is an arrangement by which a single insurance policy is issued to a central entity—commonly an employer, association, or union—for coverage of the individual members of the group.  Franchise insurance is a variation on group insurance, in which all members of the group receive individual policies."  Couch on Insurance § 1:29 (3d ed. 2002).

True group insurance generally has the following characteristics:  (1) "there is a close relationship between the certificate holder and the holder of the master policy – usually, but not always, that of employment;" (2) all employee or members are automatically enrolled by virtue of their employment or membership; (3) the "master policy holder" is responsible for notifying the insurer of the persons covered by the policy at any particular time; (3) the "master policy insured" is responsible to the insurer for paying premiums, whether on a contributory or noncontributory basis; and (4) the "master policy insured" is responsible for processing claims by employees or members.  Appleman on Insurance Law & Practice §§ 41, 54 (rev. ed. 1981).

Franchise insurance is a kind of collective insurance where the governing entity or association "grants a franchise to the insurer to solicit its members, or other personnel, and places a qualified stamp of approval" on a general policy offered by the insurer to the members. Appleman on Insurance Law & Practice § 54 (rev. ed. 1981).  Although "the holder of the master

14

policy and insurer may negotiate" to modify or terminate the plan, in all other respects the relationship between members and the insurer is "precisely that of an insurer dealing directly with its policyholders."  Id. ("each insured has independent rights against the insurer which are exactly the same as if there were no other contracts existing between such company and the organization or other members"); see Daniels v. Nat'l Home Life Assurance Co., 747 P.2d 897 (Nev. 1987) (finding that franchise insurance policy was best characterized as an individual rather than group policy for purposes of Nevada insurance statute).  Thus, franchise insurance generally has the following characteristics:  (1) members of the relevant association or entity may enroll in the plan but are not required to do so; (2) members pay premiums directly to the insurer; (3) members make claims directly to the insurer; and (4) insurers agree to "waive underwriting, and take all applicants across the board."  Appleman on Insurance Law & Practice § 54 (rev. ed. 1981).

Although true group insurance and franchise insurance are distinct products, "lawyers, legal writers, publishers, and the courts" can refer to them individually and collectively as "group insurance."  Holmes' Appleman on Insurance § 2.5 (2d ed. 2002) (criticizing this practice and arguing that it is inaccurate to refer to franchise insurance as group insurance); see Hall, 317 F.3d at 775-76 (noting that franchise insurance is "group insurance" in the sense that it involves the purchase of insurance coverage through a collectively negotiated plan).  Thus, the phrase "group insurance," standing alone begs the question of whether the phrase refers to true group insurance, franchise insurance, or both.  See Hall, 317 F.3d at 776 (holding that a policy that allowed for deduction of proceeds from "group insurance" resolved this ambiguity because it also specifically included "franchise insurance" in the list of deductibles).  In other words, the term is

ambiguous because it may reasonably refer to at least two different types of collective insurance products.

Thus, the Court must decide whether, in light of the term's inherent ambiguity, Standard's determination that the North American policy did not qualify as "group insurance" was an unreasonable interpretation. Plaintiff argues that Standard's determination was unreasonable because the North American policy bears certain features characteristic of individual insurance policies. Specifically, Plaintiff alleges that: (1) North American individually underwrote the policy for Plaintiff; (2) Plaintiff paid premiums directly to North American; (3) Plaintiff "enrolled directly"; (4) Plaintiff submits claims directly to North American; (5) North American issues Plaintiff individual billing statements; and (6) the policy automatically renews at the end of each term. Plaintiff therefore concludes that the North American policy is a pure individual policy.

However, Plaintiff does not deny that the North American policy was issued through the AAE. Indeed, the Certificate, which Plaintiff attaches to the Complaint, clearly states that it is issued pursuant and subject to "group policy PG A320," which is held by AAE, and that Plaintiff obtained the Certificate as a member of the AAE. Thus, even if all of Plaintiff's allegations are accepted as true, and even if the record before the administrator included all of those facts, the North American policy is reasonably characterized as a franchise policy because it was issued through a group, whose members could individually apply for coverage, and the members otherwise interacted directly with the North American regarding coverage and premiums.

This conclusion is further supported by the fact that the Standard policy explicitly exempts from deductible income any proceeds received under "any individual disability insurance policy." Even if Plaintiff's allegations are accepted as true, the North American policy

16

is certainly not a pure individual policy because it plainly states that it was issued pursuant to a group policy held by AAE. Moreover, North American itself admits that the policy "was issued through this group [the AAE]." Thus, it was not unreasonable for Standard to conclude that the North American policy was not an "individual policy" exempt from deduction but was "group insurance coverage" subject to deduction. Cf. Gutta v. Std. Select Trust Ins. Plans, 530 F.3d 614 (7th Cir. 2008) (holding that the phrase "group insurance coverage" did not include a policy that was expressly issued pursuant to a group policy held by a professional association notwithstanding that the policy had some attributes of individual insurance).

Plaintiff nevertheless contends that an insurance policy that bears some characteristics of an individual policy cannot reasonably be describes as "group insurance coverage." The Court disagrees. As discussed above, the phrase "group insurance," standing alone, has various possible referents. The term may be used to refer to circumstances where "a master policy was issued to a person or entity, including associations, with individual certificates then being issued to those whose lives or well-being are the subject of insurance." Holmes' Appleman on Insurance § 2.5 (2d ed. 2002) (emphasis added). If the term is used in that very general sense, it incorporates both true group insurance and franchise insurance. Id.; Hall, 317 F.3d at 775-76. Both of those referents are reasonably within the term's semantic range. Thus, even if Plaintiff's allegations are accepted as true, and the North American policy is not "true group insurance" but franchise insurance, it was not unreasonable for Standard to conclude that the unqualified phrase "group insurance coverage" included the North American policy.[5]

---

[5] The Standard policy includes as deductible income benefits received under "another group insurance coverage." It could be argued that the word "another" qualifies the phrase "group insurance coverage" by limiting it to only those kinds of group policies that are similar to the Standard policy itself. The Court rejects this argument. Inserting the word "another" before the phrase "group insurance coverage" does not require the conclusion that "group insurance coverage" is limited to only policies that are similar to the Standard policy. Moreover, even if the word "another" has some qualifying affect, it provides no indication as to which attributes of the Standard policy are intended to be excluded from the meaning of "group insurance coverage." Thus, notwithstanding the word "another," Standard

Moreover, this is not so close a case that any conflict of interest would break the tie and tip the scales in favor of Plaintiff.[6]  See Schwing, 562 F.3d at 526 (denying beneficiary's challenge of administrator's determination notwithstanding a conflict of interest because "there was an abundance of evidence . . . to support the denial of his claim and a lack of evidence to support his theory of pretext); Wakkinen v. UNUM Life Ins. Co. of Am., 531 F.3d 575, 582 (8th Cir. 2008) ("Taking into account the remaining factors discussed below, we conclude that there is not a sufficiently close balance for the conflict of interest to act as a tiebreaker in favor of finding that [the administrator] abused its discretion").  Plaintiff offers no support for the proposition that it is unreasonable to interpret the phrase "group insurance coverage" to include franchise insurance policies.  The available authority supports the conclusion that the phrase can be can be used broadly to include franchise insurance.[7]  Thus, notwithstanding a potential conflict of interest, the reasonableness of Standard's determination is not seriously in question.

The Court therefore grants Standard's motion to dismiss Plaintiff's ERISA claim under § 502(a)(1)(B) because even if Plaintiff's allegations are accepted as true, Standard's decision to deduct proceeds from the North American policy was not an unreasonable interpretation and application of the Standard policy.

---

was not unreasonable in determining that the North American policy, which bears some group characteristics, was within the meaning of "group insurance coverage."

[6] Plaintiff alleges facts sufficient to establish a conflict of interest.  Plaintiff alleges that Defendant "marketed, sold, managed, and administered" the Standard Policy.  (Second Am. Compl. ¶ 19).  Plaintiff further alleges that "Standard considered [the North American Policy], and all disability insurance policies issued through professional associations, as 'group' policies so it could take the benefits received from the [North American Policy] as a set off from the benefits received from the Standard Policy, thus reducing its financial obligation to [Plaintiff] and those similarly situated, and increase its own bottom line profitability."  (Second Am. Compl.¶ 45).

[7] Some courts have held that, for regulatory purposes, franchise insurance is more analogous to individual insurance than true group insurance.  See Daniels, 747 P.2d 897, 900 (Nev. 1987) (finding that franchise insurance policy was best characterized as an individual rather than group policy for purposes of Nevada insurance statute); Wood v. New York Life Ins. Co., 336 S.E.2d 806 (Ga. 1985) (same regarding Georgia's insurance statute).  Those cases do no undermine the Court's conclusion that the bald phrase "group insurance" can reasonably include franchise insurance.

**B.  Plaintiff's ERISA Claims under § 502(a)(3)**

Plaintiff asserts claims for breach of fiduciary duty and breach of contract under ERISA §

502(a)(3) (Counts I and III respectively).  Under ERISA § 502(a)(3), a participant or beneficiary

of an ERISA-governed plan can sue: "(A) to enjoin any act or practice which violates any

provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief

(i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the

plan."  29 U.S.C. § 1132(a)(3).  Plaintiff's claim for breach of fiduciary duty is apparently

predicated on § 404 of ERISA, "which defines fiduciary duties owed by plan administrators to

their beneficiaries."  Harte v. Bethlehem Steel Corp., 214 F.3d 446, 451 (3d Cir. 2000) (citing §

404 codified at 29 U.S.C. § 1104).

The sole basis for Plaintiff's claims under ERISA § 502(a)(3) is that Standard improperly

deducted his North American policy benefits from proceeds due under the Standard policy.

According to Plaintiff, Standard's improper deduction amounts to a breach of its fiduciary duties

under ERISA and a breach of the terms of the Standard policy.  Plaintiff does not allege that

Standard engaged in any other independent misconduct amounting to a breach of its fiduciary

duties or a breach of the plan's terms.  However, as discussed above, Standard's determination

that proceeds from the North American policy should be deducted from proceeds due under the

Standard policy was not an unreasonable interpretation or application of the Standard policy.

Because Standard's determination was reasonable in light of the policy's language, Plaintiff fails

to state a claim for breach of fiduciary duty or breach of the Standard policy under § 502(a)(3).[8]

---

[8] Standard also argues that Plaintiff's § 502(a)(3) claims are barred under Varity Corp. v. Howe, 516 U.S. 489, 512
(1996), which held that § 502(a)(3) is a "catchall" provision which "act[s] as a safety net, offering appropriate
equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy."  According to
Standard, Varity stands for the proposition that a plaintiff may not bring a § 502(a)(3) unless the plaintiff may not
obtain the requested relief by asserting a claim under § 502(a)(1)(B).  Plaintiff responds by citing various cases
permitting plaintiffs to pursue both § 502(a)(1)(B) and § 502(a)(3) claims.  See, e.g., Moore v. First Union Corp.,
00-2512, 2000 U.S. Dist. LEXIS 10730, at *2 (E.D. Pa. July 24, 2000) ("As was recently noted by this Court, Varity

See <u>Zurawel</u>, 2010 U.S. Dist. LEXIS 102085, at *60 (dismissing claim under § 502(a)(3) because court found that administrator's conduct was not improper under § 502(a)(1)(B)).

### C.  Leave to Amend Pursuant to Rule 15

Standard also argues that Plaintiff's Second Amended Complaint should be dismissed because Plaintiff filed the Complaint without obtaining leave of the Court.  Because the Court determines that the Second Amended Complaint should be dismissed on the merits for failure to state a claim pursuant to Rule 12(b)(6), the Court does not address Standard's alternative procedural argument that it should be dismissed for failure to obtain leave of the Court pursuant to Rule 15.  However, counsel for Plaintiff would be well served to take heed of both the Federal Rules of Civil Procedure and the Local Civil Rules before making any future filings in this Court.

---

does not propose a bright-line rule that a claim for equitable relief under § 1132(a)(3) should be dismissed when a plaintiff also brings a claim under § 1132(a)(1)(B)."); <u>Crummett v. Metro. Life Ins. Co.</u>, No. 06-1450, 2007 U.S. Dist. LEXIS 50956, at *8 (D.D.C. July 16, 2007).  Because the Court finds that Plaintiff's § 502(a)(3) claims fail on the merits, the Court need not address this argument by Standard.

Moreover, the Court notes that the residual or "catchall" nature of § 502(a)(3) does not imply that a plaintiff has a claim under § 502(a)(3) whenever his claim fails under § 502(a)(1)(B).  <u>See</u> <u>Zurawel v. Long Term Disability Income Plan for Choices Eligible Emp. of Johnson & Johnson</u>, No. 07-5972, 2010 U.S. Dist. LEXIS 102085, at *60 (D.N.J. Sept. 27, 2010) (dismissing § 502(a)(3) and § 502(a)(1)(B) claim because the plan administrator did not act improperly).  Section 502(a)(3) is principally concerned with ensuring that plaintiffs can obtain appropriate equitable relief for ERISA violations that cause injuries that are not otherwise redressable under ERISA's civil claim provision.  <u>See</u> <u>Varity Corp</u>, 516 U.S. at 512.  If, as in this case, the sole basis for the plaintiff's § 502(a)(3) claims is that the administrator denied benefits in an arbitrary manner, the standard for reviewing the administrator's decision is the same as the standard for reviewing denial of benefits under § 502(a)(1)(B).  And, if the administrator discharges his fiduciary duties by applying the plan pursuant to its terms, then there is no underlying ERISA violation upon which to base either a § 502(a)(3) or § 502(a)(1)(B) claim for equitable relief.  <u>See</u> <u>Zurawel</u>, 2010 U.S. Dist. LEXIS 102085, at *60.

IV.      CONCLUSION

For the reasons discussed above, the Court grants Standard's motion to dismiss the

Second Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil

Procedure 12(b)(6).  An appropriate Order shall enter.


Dated: 5/2/2011                                        /s/ Robert B. Kugler
                                                      ROBERT B. KUGLER
                                                      United States District Judge